UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| GINA G.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO,[2] <br><br> Defendants. | Case No. 25-cv-02016-SK <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Regarding Docket Nos. 9, 10 |

This matter comes before the Court upon consideration of the motion for summary judgment filed by Plaintiff Gina G. ("Plaintiff") and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner denying her social security benefits claim for a combination of mental and physical impairments under Title II of the Social Security Act. Both parties have consented to the jurisdiction of the undersigned. (Dkt. Nos. 4–5.) Pursuant to Civil Local Rule 16-5, the motions are deemed submitted for decision without oral argument. After careful consideration of the parties' briefing, the administrative record, and relevant legal authority, the Court GRANTS Plaintiff's motion and DENIES the Commissioner's cross-motion for the reasons set forth below.

**BACKGROUND**

On October 27, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging she was disabled starting on August 16, 2019. (Administrative Record

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became the Acting Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this action.

("AR") 18.) Plaintiff was 44 years old at the time of her alleged onset date. (AR 324.) Plaintiff's claim was initially denied on August 16, 2022 and upon reconsideration on December 23, 2022. (*Id.*) On January 3, 2024, an Administrative Law Judge ("ALJ") held a hearing. (*Id.*) Plaintiff, accompanied by counsel, and vocational expert Allan Cummings both testified at the hearing. (AR 86-110.)

On March 13, 2024, the ALJ issued an unfavorable decision. (AR 15.) The ALJ's decision became the final order of the Commissioner after Plaintiff's request for review by the Appeals Council was denied. (AR 1) The ALJ's decision is therefore the final decision subject to this court's review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act between August 16, 2019, the alleged onset date, and March 13, 2024, the date of the ALJ's decision. (AR 19.) In the decision, the ALJ first noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. (AR 20.) As such, to be entitled to a period of disability and disability insurance benefits, Plaintiff must establish disability on or before December 31, 2024. (AR 18.) The ALJ then applied the five-step sequential analysis explained below to determine whether Plaintiff was disabled. (AR 20-27.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 16, 2019, the alleged onset date. (AR 20.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, and mild cervical spondylosis. (*Id.*) The ALJ noted that Plaintiff's severe impairments significantly limited her ability to perform basic work activities. (*Id.*) In addition, the ALJ found that Plaintiff had the following non-severe physical and mental impairments: hypothyroidism, depressive disorder, and substance abuse disorder. (AR 21.)

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 22.) The ALJ considered Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and concluded that Plaintiff's physical impairments did not meet or equal the listing because there was "no compromise of a nerve root

and no inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements." (*Id.*)

Before reaching step four, the ALJ determined Plaintiff's residual functional capacity. The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with certain modifications. (*Id.*) To reach this determination, the ALJ assessed the evidence in the administrative record to consider whether an underlying medically determinable physical or mental impairment could reasonably be expected to produce Plaintiff's pain or symptoms. (AR 23.) The ALJ then evaluated the extent to which the intensity, persistence, and limiting effects of Plaintiff's symptoms limit her work-related activities. (*Id.*) Lastly, at step four, the ALJ concluded that Plaintiff could perform past relevant work as a legal secretary and thus, did not qualify for disability benefits. (AR 27.)

Plaintiff contends that the ALJ's step two, RFC, and step four determinations are not supported by substantial evidence and thus, requests that the Court reverse the ALJ's decision and remand for further proceedings. (Dkt. No. 9, p. 18.)

**ANALYSIS**

**I.    Legal Standards.**

**A.    Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ"). *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720–21.

/ / /

United States District Court
Northern District of California

If the ALJ made a legal or factual error, the district court must next consider whether that error was harmless. A court "may not reverse an ALJ's decision based on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citation omitted).

### B.    Prima Facie Case for Disability.

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. *Id.* § 416.920(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months. *Id.*

Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience. *Id.* § 404.1520(d).

If the claimant's impairments do not meet or equal a listed impairment, before reaching step four, the ALJ will assess and make a finding about the claimant's RFC based on all relevant medical and other evidence in the claimant's case record. *Id.* § 416.920(e). At step four, the ALJ determines whether the claimant has the RFC to perform past relevant work. *See id.* § 404.1520(f). If the claimant can perform past relevant work, benefits will be denied. *See id.* If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other

4

work. *Id.* § 404.1520(f)(1). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* §§ 404.1520(e) and (g). There are two ways to make this determination: (1) the testimony of an impartial vocational expert, or (2) reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Id.*

### C.    Supplemental Regulations for Determining Mental Impairments.

The Social Security Administration supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step evaluation process. *See generally* 20 C.F.R. § 404.1520a. First, the ALJ must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four areas are known as the "Paragraph B" criteria. *Id.*

Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). Under Appendix 1, to satisfy to the Paragraph B criteria, a claimant's mental impairment renders them disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). By contrast, an "extreme" limitation is the inability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability

inquiry. *See* 20 C.F.R. § 404.1520a(d)(3).

**II.   Discussion.**

Plaintiff contends that the ALJ's determination at steps two and four and regarding RFC are not supported by substantial evidence.  Plaintiff, specifically, moves for summary judgment on the grounds that the ALJ erred in: (1) assessing Plaintiff's mental impairments as non-severe at step two; (2) evaluating the persuasiveness of medical opinions in its RFC determination; (3) rejecting Plaintiff's subjective symptom testimony in the RFC determination; and (4) finding that Plaintiff is capable of performing past relevant work at step four.  (Dkt. No. 9, pp. 5-18.)  The Court addresses each of Plaintiff's grounds for reversal of the ALJ's decision in turn.

**A.   Step 2: The ALJ's step two findings are not supported by substantial evidence.**

Plaintiff argues that the ALJ erred in determining that her mental impairments were not severe at step two.  (Dkt. No. 9, pp. 5-6.)  The ALJ found Plaintiff's medically determinable mental impairments of depressive disorder and substance use disorder non-severe because "considered singly and in combination, [Plaintiff's mental impairments] do not cause more than [a] minimal limitation in [her] ability to perform basic mental work activities."  (AR 21.)

**1.   The ALJ's mental impairment and severity determinations.**

Plaintiff appears to argue that the ALJ improperly relied on cherry-picked evidence in her Paragraph B determination, which does not accurately reflect Plaintiff's overall mental health condition.  (Dkt. No. 9, pp. 5-6.)  In response, the Commissioner asserts that the ALJ's evaluation of Plaintiff's mental impairments is supported by substantial evidence.  (Dkt. No. 10, p. 4.)

Under step two, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 916.922.  Importantly, an impairment must be established by objective medical evidence from an acceptable medical source and cannot be established on the basis of a claimant's symptoms alone.  20 C.F.R. §§ 416.913, 416.921; *see also* 20 C.F.R. § 404.1521 ("impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.... We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an

United States District Court
Northern District of California

impairment(s).").

The step-two inquiry has been defined as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996.)  A medical impairment may be "found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.' " *Id*.  (quoting Soc. Sec. Rulings 85–28).  Nevertheless, Plaintiff must still meet her burden to show "that [s]he suffers from a medically determinable impairment" and "that these impairments or their symptoms affect [her] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001) (citing Soc. Sec. Rulings 96-3p and 96-7p); *see also Hurter v. Astrue*, 465 F. App'x. 648, 650 (9th Cir. 2012) (unpublished) (plaintiff "had the burden of proving that her impairments affected her ability to perform basic work activities.").

### a.    The ALJ's determination of Plaintiff's mental impairments.

The ALJ determined that Plaintiff has the following medically determinable mental impairments: depressive disorder and substance use disorder.  (AR 21); *see* 20 C.F.R. § 404.1520a(b)(1).  The ALJ considered "Paragraph B" criteria to ultimately conclude that Plaintiff's mental impairments were non-severe because they "cause[d] no more than [a] 'mild' limitation in any of the functional areas and the evidence d[id] not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities."  (AR 22.)

The Court finds that the ALJ failed to address evidence regarding Plaintiff's other mental conditions in its determination, which included cluster B personality disorder, general anxiety disorder, and borderline personality disorder. *Cf. E.T., Plaintiff, v. LELAND DUDEK, et al., Defendants.*, No. 25-CV-02799-AMO, 2026 WL 734889, at *4 (N.D. Cal. Mar. 16, 2026) (concluding that substantial evidence supported the ALJ's step two finding in part because the ALJ acknowledged and considered limitations of all the plaintiff's impairments, including those that were non-severe).

For instance, as of August 26, 2021—after Plaintiff's alleged onset date—Plaintiff had a diagnosis of Cluster B personality disorder and anxiety.  (AR 617-618.)  Again, on August 30, 2022, Plaintiff's "active problem list" included diagnosis of Cluster B personality disorder and

United States District Court
Northern District of California

anxiety.  (AR 651.)  While an ALJ does not use a diagnosis or a medical opinion to establish the existence of an impairment, 20 C.F.R. § 404.1521, the ALJ here did not address Plaintiff's additional mental conditions at all in its mental impairment determination.  The ALJ appeared to be aware of Plaintiff's additional mental conditions because the ALJ noted (but did not evaluate) Plaintiff's depression, anxiety, obsessive compulsive disorder, borderline personality disorder in its RFC determination analysis.  (AR 23.)

In addition to Plaintiff's mental condition diagnoses, progress notes from the UCSF Medical Center dated November 8, 2023, January 30, 2024, February 13, 2024, and April 17, 2024 indicated that Plaintiff's psychiatric history included anxiety, depression, obsessive compulsive disorder, and borderline personality disorder.  (AR 33, 39, 83, 697.)  On April 1, 2024, borderline personality disorder was included in Plaintiff's "active problem list."  (AR 69.)

Because the ALJ failed to address evidence regarding Plaintiff's additional mental conditions and solely limited its assessment to Plaintiff's depressive disorder and substance use disorder, (AR 21), the Court concludes that the ALJ's determination of Plaintiff's medically determinable mental impairments is not supported by substantial evidence.  To determine that Plaintiff's additional mental conditions did not qualify as medically determinable mental impairments or were non-severe,  there must be an explanation, but the ALJ here did not do so.

### b.    Assessment of severity of mental impairment.

Plaintiff argues that the ALJ's Paragraph B findings are not supported by substantial evidence because the ALJ's decision does not accurately reflect Plaintiff's overall mental health condition and because her mental impairments more than minimally impacted her ability to work. (Dkt. No. 9, pp. 5-11.)  In response, the Commissioner contends that the ALJ's Paragraph B findings are supported by substantial evidence in part because Plaintiff did not seek mental health treatment beyond her primary care doctor.  (Dkt. No. 10, p. 4.)

The ALJ found that Plaintiff had non-severe depressive disorder and substance use disorder with no more than mild limitations in the four broad areas of mental functioning known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or

managing oneself.  (AR 21-22); *see also* 20 C.F.R. § 404.1520a (describing the process for evaluating mental impairments).

Regarding the first two functional areas, the ALJ supported her mild limitation findings by noting that Plaintiff's "mental health status has been intact in her medical appointments" and that Plaintiff "had a good rapport with providers."  (AR 21.)  The ALJ further reasoned, in relevant part, that Plaintiff's providers "have not noted significant longitudinal deficits in memory or recall in her appointments."  (*Id.*)  In regard to the third functional area, the ALJ supported the determination of a mild limitation by noting that Plaintiff used public transportation, prepared her own meals, and handled her own medical care.  (AR 21-22.)  Lastly, the ALJ supported her fourth functional area finding by noting that Plaintiff had "appropriate grooming and hygiene," "generally normal mood and affect."  (AR 22.)

The Court finds that the evidence the ALJ cited as support for her mild limitation conclusions are contradicted by Plaintiff's medical record.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.")  Regarding the first functional area— understanding, remembering, or applying information—in a March 16, 2022 function report, Plaintiff reported not following verbal instructions well.  (AR 333.)  In addition, regarding the second functional area—interacting with others—Plaintiff reported having problems with supervisors in the past.  (*Id.*)  Plaintiff also reported having an attention span of 15-20 minutes, which contradicts the ALJ's conclusion that Plaintiff has a mild limitation  in concentrating, persisting, or maintaining pace.  (*See id.*)  In the same March 2022 report, Plaintiff reported experiencing depression and anxiety, which the ALJ did not address in its analysis.  (AR 329.)

Notably, the ALJ also did not discuss medical records indicating Plaintiff's depression. Robert A. Savala, M.D., Plaintiff's primary care physician, noted Plaintiff's depression diagnosis on February 14, 2022, March 27, 2021, November 9, 2020, April 30, 2020, and October 24, 2019. (AR 511, 515, 519, 526, 531.)  Plaintiff's depression could potentially impact Plaintiff's ability to interact with others and understand, remember, and apply information.

Rather, the ALJ's citations supporting the determination of her mild limitations include

records either unrelated to Plaintiff's mental health or that occurred before the alleged onset date. (AR 401-509, 537-565, 621-623, 629-640, 668-676, 678-681.)  It is unavailing that some medical records indicated that Plaintiff had a "normal affect"  and no "behavioral problems."  (AR 520, 619, 642, 646, 667, 677.)  To be sure, a " 'normal' designation of [a] [p]laintiff's 'mental status' is not only ambiguous but is also not dispositive of [a] [p]laintiff's mental health as a whole ... [a] [p]laintiff having a composed and 'normal' demeanor during doctor visits does not preclude her from experiencing anxiety and depression in other contexts." *Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017) (internal citations and quotation marks omitted).

Moreover, Plaintiff's use of public transportation, preparation of her own meals, handling of her own medical care, and "appropriate grooming and hygiene" does not undermine the severity of her mental impairments.  Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1989) (internal citation omitted).

Finally, Plaintiff's alleged failure to seek formal mental health treatment is not probative of whether Plaintiff suffers from a mental impairment. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  The Ninth Circuit cautions that "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

For these reasons, the Court concludes that the ALJ's assessment of the severity of Plaintiff's mental impairments is not supported by substantial evidence.

### c.      Drug addiction and alcoholism analysis.

Plaintiff argues that the ALJ failed to determine the materiality of Plaintiff's substance abuse, as required by Social Security Ruling 13-2p.  (Dkt. No. 9, p. 6.)  Regarding Plaintiff's substance use disorder, the ALJ noted Plaintiff's disorder was "in remission" and that the record showed the claimant was sober from 2013-2018.  (AR 21.)  The ALJ further noted that, even though Plaintiff relapsed in 2018, she went to rehab and had remained sober since.  (*Id.*)  Lastly, the ALJ found that Plaintiff's "increase in depression was in the setting of substance use."  (*Id.*)

When substance abuse is an issue, an ALJ must determine first whether a claimant is disabled before determining the effect of substance abuse on the medical impairments. *Bustamante v. Massanari*, 262 F.3d 949, 952 (9th Cir. 2001). If the ALJ finds that the claimant is disabled but that substance abuse also has an effect on the claimant, the claimant cannot receive disability benefits if substance abuse "would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled.")

Social Security Ruling 13-2p (hereinafter "SSR 13-2p") guides an ALJ's evaluation of drug addiction or alcoholism. Social Security Ruling 13-2p.; Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 2013 WL 621536, (Feb. 20, 2013). To determine whether drug addiction or alcoholism "is material, [the ALJ] must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period." *Id.*

Here, the Court finds that the ALJ erred by concluding at step two that Plaintiff's "increase in depression was in the setting of substance abuse." (AR 21.) As noted above, the ALJ determined that Plaintiff had a medically determinable mental impairment of depressive disorder. (AR 21.) As the Ninth Circuit instructed in *Bustamante*, the ALJ was required to proceed with the five-step inquiry before attempting to determine the impact of Plaintiff's substance abuse on her other mental impairments. *See Bustamante*, 262 F.3d at 955. Indeed, "[i]f, and only if, the ALJ found that [Plaintiff] was disabled under the five-step inquiry, should the ALJ have evaluated whether [Plaintiff] would still be disabled if [s]he stopped [her substance abuse]." *Id.*; *see also Reese v. Berryhill*, No. 17-CV-06655-DMR, 2019 WL 4738279, at *16 (N.D. Cal. Sept. 27, 2019) (noting that "Ninth Circuit caselaw makes clear that an ALJ must proceed through the five-step inquiry before considering the impact of drug or alcohol use on the claimant's impairments.")

\*\*\*

Because the ALJ failed to consider evidence regarding Plaintiff's other mental conditions and erred by concluding at step two that Plaintiff's increase in depression was in the setting of

11

United States District Court
Northern District of California

substance abuse, the ALJ's step two findings are not supported by substantial evidence. *Cf. R.R. v. Bisignano*, No. 24-CV-02736-VKD, 2025 WL 2780789, at *6 (N.D. Cal. Sept. 30, 2025) (concluding that substantial evidence supported the ALJ's step-two finding in part because the ALJ conducted a comprehensive review of the plaintiff's mental health records and psychiatric history in assessing the severity of the plaintiff's mental impairments).

**B. The ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence.**

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 22.) The ALJ concluded that Plaintiff's *physical* impairments did not meet or medically equal the severity of one of the listed impairments. (*Id.*) (emphasis added). Notably, the ALJ did not consider Plaintiff's mental impairment in the analysis at step three.

Where, as here, the claimant's impairments do not meet or equal a listed impairment, the ALJ must assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. § 416.920(e); *see Bray v. Comm'r of Social Security Admin.*,554 F.3d 1219, 1222–23 (9th Cir. 2009) ("Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."). The RFC measurement describes the most an individual can do despite their limitations. 20 C.F.R. § 404.1545(a)(1).

The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with specific physical modifications. (AR 22.) The ALJ ultimately concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the evidence in the record. (AR 23.)

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in: (1) evaluating the persuasiveness of medical opinions; and (2)

12

rejecting Plaintiff's subjective symptom testimony.  (Dkt. No. 9, pp. 5-18.)  The Court addresses each of Plaintiff's arguments in turn.

### 1.      Medical Opinion Evidence.

In 2017, the Social Security Administration revised its rules for evaluating medical evidence.  *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022).  Under the revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa."  *Id*. (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5844).

"The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency."  *Id*. (quoting 20 C.F.R. § 404.1520c(a).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence."  20 C.F.R. § 404.1520c(c)(1).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2).

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion."  *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(3)).  Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records."  *Id*. (citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v)).  That said, "the ALJ no longer needs to make specific findings regarding these relationship factors."  *Id*.

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Id*.  An ALJ must "articulate … how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings.  20 C.F.R § 404.1520c(b)(2).

/ / /

13

United States District Court
Northern District of California

/ / /

Here, Plaintiff argues that the ALJ erred in evaluating the opinions of Christine Corrigan, Psy.D., and psychological consultants Paul Klein, Psy.D., and Janet Telford-Tyler, Ph.D.[3] (Dkt. No. 9, pp. 6-11, 16-17.)  The Court agrees.

### a.   Opinion of Christine Corrigan, Psy.D.

Plaintiff contends that the ALJ erred in rejecting Corrigan's opinion regarding Plaintiff's mental health status and moderate work limitations.  (Dkt. No. 9, pp. 6-9.)  On April 23, 2022, Corrigan performed a consultative psychological evaluation of Plaintiff.  (AR 583.)  Corrigan's diagnoses included depressive disorder, alcohol use disorder, stimulant use disorder, sedative, hypnotic and anxiolytic use disorder, and borderline personality disorder.  (AR 588.)

Corrigan determined that Plaintiff had moderate limitations in her "capacity to interact appropriately with others including co-workers, supervisors, and the public" and the "ability to adapt to the usual stresses common to a competitive work environment including completing a normal workday or workweek and responding appropriately to changes in a work setting." (AR 588-589.)  Corrigan based her limitation findings on Plaintiff's "medical history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and prognosis."  (AR 588.)

The ALJ found Corrigan's opinion to be unpersuasive, explaining that Corrigan's opinion was "internally inconsistent" and lacked supportability with the record.  (AR 26.)  The ALJ noted, specifically, that Corrigan failed to explain "why [Plaintiff] would have a *moderate* impairment in her ability to adapt to the usual stresses common to a competitive work environment … and yet no more than a *mild* impairment in her ability to perform detailed and complex tasks, accept instructions from supervisors, interact with others, and activities within a schedule and maintain regular attendance, and complete a normal workday or workweek without interruptions ..." (*Id.*)

---

[3] Plaintiff also argues that the ALJ erred in evaluating the opinion of Robert Tang, M.D. Because the crux of the parties' motions for summary judgment is discussion of Plaintiff's mental impairments and because the ALJ's evaluation of Tang's medical opinion primarily concerned Plaintiff's physical impairments, the Court need not address Tang's medical opinion in this order. (AR 24-26.)  Except where relevant, the Court need not address the medical opinions of Robert Savala, M.D., and Mara Madera, M.D., regarding Plaintiff's physical impairments for the same reasons.  (AR 25-26.)

(emphasis added). However, Corrigan found a moderate (not mild) limitation in Plaintiff's capacity to interact appropriately with others including co-workers and supervisors. (AR 589.) Corrigan explained her limitation finding by noting that Plaintiff "report[ed] a history of conflict with symptoms of depression and mild paranoia secondary to interpersonal problems in the workplace." (*Id.*)

The ALJ further wrote that, "[a]t the time of the evaluation, the claimant was receiving medication prescribed by her primary care provider, but was not receiving any mental health treatment." (AR 26.) However, as previously explained, Plaintiff's alleged failure to seek mental health treatment does not support an inference that Plaintiff does not suffer from mental health impairments. As the Ninth Circuit explained, "the fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a medical doctor's] assessment of claimant's condition is inaccurate." *Nguyen*, 100 F.3d at 1465 (internal citation omitted). Indeed, the record suggests that Plaintiff's depression and paranoia contributed to her lack of mental health treatment. Plaintiff reported being too depressed to get dressed or get out of bed and testified that she was extremely depressed due to her career loss and sense of financial stability. (AR 329, 103, 585.) The medical record also indicates that Plaintiff reported her depression and paranoia during medical appointments and examinations. (AR 57, 586, 589.)

In addition, the ALJ explained that Corrigan "noted fairly normal findings on [Plaintiff's] mental status exam." (AR 26.) However, Corrigan did not note "normal findings" regarding Plaintiff's mental impairments in her evaluation. Rather, Corrigan solely commented that Plaintiff's posture, gait, and speech rate appeared to be normal. (AR 585.) Even so, notwithstanding potential "normal" findings regarding Plaintiff's mental health, "[i]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months ... and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see Jones v. Kijakazi*, No. 21-16950, 2022 WL 4285597, at *1–2 (9th Cir. 2022) (holding that an ALJ failed to provide clear and convincing reasons where the ALJ "mischaracterized the contents of a function report ... and a psychological evaluation").

15

///

Lastly, the ALJ found Corrigan's opinion unpersuasive because she based her findings on a one-time examination of Plaintiff. (AR 26.) While the extent of a medical provider's relationship with a claimant is certainly relevant to the weighing of medical evidence, 20 C.F.R. § 404.1520c(c)(3)(ii), the fact that Corrigan only examined Plaintiff on one occasion does not by itself undermine her findings. *See Alex P. v. King*, No. 23-CV-06238-SK, 2025 WL 1753508, at *4 (N.D. Cal. Feb. 19, 2025) (rejecting the ALJ's one-time examination reasoning in discussing a purported inconsistency between a medical doctor's opinion and the claimant's treatment history); *Ryan B. v. O'Malley*, No. 23-CV-03644-SI, 2024 WL 4227590, at *6 (N.D. Cal. Sept. 17, 2024) (criticizing the ALJ for discrediting medical diagnoses on the basis that it was "abrupt" as "an impermissible substitution of [the ALJ's] own judgment for that of a doctor").

For these reasons, the Court concludes that the ALJ's explanation for finding Corrigan's opinion unpersuasive was not supported by substantial evidence.

### b.    Opinions of Psychological Consultants Paul Klein and Janet Telford-Tyler.

Plaintiff contends that the ALJ erred in rejecting opinions by state agency mental consultants Klein and Telford-Tyler regarding Plaintiff's mental health status and moderate work limitations. (Dkt. No. 9, pp. 9-11.) On May 22, 2022, at the initial level, Klein conducted a mental residual functional capacity assessment. (AR 125-27.) Klein noted in his assessment that Plaintiff had moderate social interaction limitations in the following areas: "the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; [and] the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (AR 126-127.)

On December 20, 2022, at the reconsideration level, Telford-Tyler conducted a mental residual functional capacity assessment. (AR 150-153.) Telford-Tyler found that Plaintiff had "sustained concentration and persistence limitations" and the following moderate limitations: "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances; the ability to interact appropriately with the general public; [and] the ability to accept instructions and respond appropriately to criticism from supervisors." (AR 151-153.)

The ALJ found Klein's and Telford-Tyler's opinions unpersuasive because their opinions were inconsistent with Plaintiff's treatment record. (AR 27.) The ALJ in large part repeated the same reasoning included in her rejection of Corrigan's opinion. (AR 27.) For the reasons explained above, the Court concludes that the ALJ's explanation for finding Klein's and Telford-Tyler's opinions unpersuasive was not supported by substantial evidence.

### 2.    Plaintiff's Credibility Assessment.

Plaintiff contends that the ALJ erred in weighing Plaintiff's subjective complaints regarding her mental impairments and conditions. (Dkt. No. 9, pp. 6, 11.) The Court concurs.

"[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and [sic] for resolving ambiguities." *Reddick*, 157 F.3d at 722. "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id*. In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (citation omitted). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted).

///

The ALJ is permitted to consider a number of factors including: (1) inconsistencies in the record concerning Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) Plaintiff's daily activities; (4) Plaintiff's work record; and (5) observations of treating and examining physicians and other third parties. *See Smolen*, 80 F.3d at 1284.  If the ALJ supports their credibility determination with substantial evidence in the record, the Court may not "[] second-guess that decision." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (AR 23.)  The ALJ, however, further noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)  The ALJ explained her conclusion by solely discussing Plaintiff's *physical* limitations.  (AR 23-25.)  Specifically, the ALJ discussed Plaintiff's testimony regarding her back, neck, and arm pain.  (AR 23.)  The ALJ also discussed Plaintiff's testimony regarding her physical therapy, narcotic pain medication, spinal cord stimulator, epidural blocks, and medications to alleviate her pain.  (*Id.*)

The Court finds that the ALJ failed to address Plaintiff's testimony regarding her non-severe mental limitations and additional mental conditions.  The law is clear that when determining a claimant's RFC, the ALJ must take into consideration all medically determinable impairments, including non-severe impairments.  20 C.F.R. § 404.1545; *Hutton v. Astrue*, 491 F. App'x 850, 850-51 (9th Cir. 2012).  Plaintiff testified that she experienced extreme depression, anxiety, and that her physical pain affected her mental state.  (AR 102-103.)  Despite the ALJ's finding that Plaintiff's non-severe mental impairments caused mild limitations, the ALJ only specifically addressed physical impairments in Plaintiff's RFC and did not "show her work" as to why the RFC did not account for Plaintiff's mental impairments.  (AR 23-25); *see Diane v. Kijakazi*, No. 8:22-CV-02101-BFM, 2023 WL 7301969, at *5-6 (C.D. Cal. Nov. 6, 2023)  (finding

18

that the ALJ erred by failing to explain how a mild limitation impacted the plaintiff's RFC and describing the principle that an ALJ should be affirmed where they show their work).  To be sure, "an RFC that  fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  Because the ALJ did not address Plaintiff's testimony regarding her non-severe mental impairments and overall mental health, the ALJ did not support her credibility determination with substantial evidence in the record.  *Cf. D.L.P. v. Kijakazi*, No. 21-CV-00792-VKD, 2022 WL 4472064, at *4 (N.D. Cal. Sept. 26, 2022) (granting the Commissioner's motion for summary judgment in part because the ALJ considered the claimant's non-severe mental impairments in formulating his RFC) (collecting cases).

In addition, the Court finds the ALJ's proffered inconsistency between Plaintiff's daily activities and physical functional limitations unavailing.  (AR 25.)  The ALJ noted that Plaintiff helps her 13-year-old son with his homework, feeds her cat, occasionally prepares simple meals, does light housework, uses public transportation, and goes out alone.  (*Id.*)  However, a claimant's ability to maintain some daily activities does not translate into a negative determination regarding the credibility of their testimony.  *See Garrison*, 759 F.3d at 1016  ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).  The Ninth Circuit has held that "[o]nly if [a claimant's] level of activity were inconsistent with [their] claimed limitations would those activities have any bearing on [the] claimant's credibility." *Reddick*, 157 F.3d at 722.  Here, the ALJ did not explain *how* Plaintiff's activities of daily living are inconsistent with Plaintiff's claimed limitations in a workplace environment.  Instead, the ALJ reasoned that because Plaintiff's were "inconsistent" she may have "overstate[d] [her] limitations at times." (AR 25.)  Accordingly, the supposed inconsistencies between Plaintiff's daily activities and her testimony regarding her physical impairments do not satisfy the clear, convincing, and specific standard to discredit Plaintiff's testimony regarding her

United States District Court
Northern District of California

pain-related impairments.

***

In sum, the Court concludes that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence.  The ALJ did not incorporate Plaintiff's non-severe mental limitations in her RFC calculation, did not assess Plaintiff's RFC based on all relevant evidence in the case record, did not provide an explanation supported by substantial evidence for rejecting the opinions of Corrigan, Klein, and Telford-Tyler, and did not address Plaintiff's testimony regarding her mental health.  *See* 20 C.F.R. §§ 416.945(a), 404.1520c(b), 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' ... when we assess your residual functional capacity.").

### D.    Step Four: The ALJ erred in determining that Plaintiff was capable of performing past relevant work.

Plaintiff argues that the ALJ erred in its step four determination because she did not provide a detailed assessment of Plaintiff's mental impairments and limitations.  (Dkt. No. 9, pp. 17-18.) Plaintiff contends that "[t]his [is] particularly important because the ALJ found that [Plaintiff] could return to past skilled work [as a] legal secretary that required mental functioning well beyond the basic unskilled work tasks the ALJ considered in the step two analysis."  (*Id.*)

To assist in determining whether a claimant can perform other work activities, an ALJ may rely on an impartial vocational expert ("VE").  The VE testifies about the jobs the claimant is capable of performing, despite her limitations.  *Gutierrez v. Colvin,* 844 F.3d 804, 806-07 (9th Cir. 2016).

The ALJ found that Plaintiff could perform past relevant work as a legal secretary and therefore did not qualify for disability benefits.  (AR 27.)  The ALJ found that Plaintiff's work as a legal secretary did not require the performance of work-related activities precluded by her RFC. (*Id.*)  Further, the ALJ reasoned that Plaintiff's legal secretary job met the criteria for past relevant work because it was performed within the last 15 years, her work lasted long enough for her to learn to do the job, and her earnings from that job were at levels of substantial gainful activity.

United States District Court
Northern District of California

(*Id.*)  The ALJ accepted the testimony of Allan Cummings, a vocational expert, regarding Plaintiff's ability to perform her past relevant work as a legal secretary based on her RFC.  (*Id.*)

Because the Court finds that the ALJ's step two and RFC determinations are not supported by substantial evidence, the Court concludes that the ALJ also erred in its step four evaluation. Importantly, the ALJ's discussion of medical opinions—medical sources bearing on Plaintiff's mental health—and failure to address Plaintiff's testimony regarding her mental health reveal that the ALJ failed to adequately develop the record.  The ALJ has a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (citation omitted).  The duty to develop the record is heightened where, as here, the claimant suffers from a mental illness and may not be able to protect her own interests. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)).  Because the existing record is inadequately developed as to Plaintiff's mental impairments, the ALJ's step four determination is not supported by substantial evidence.

### E.    Remand is appropriate because the ALJ's errors were not harmless.

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

A court "may not reverse an ALJ's decision based on account of an error that is harmless." *Molina*, 674 F.3d at 1111 (internal citation omitted).  A court is precluded from considering an error to be "harmless unless it can confidently conclude that no reasonable ALJ ... could have reached a different disability determination." *Stout*, 454 F.3d at 1056.  A court may find harmless error where the error was inconsequential to the ultimate disability determination. *Id.* at 1055. The "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Here, Plaintiff argues that the ALJ's findings resulted in harmful errors at step two, Plaintiff's RFC determination, and step four.  (Dkt. No. 11, p. 2.)  The Court agrees.  The ALJ's

United States District Court
Northern District of California

21

rejection of Corrigan, Klein, and Telford-Tyler's opinions was not harmless because their opinions addressed Plaintiff's mental impairments. Similarly, the ALJ's failure to address Plaintiff's testimony regarding her mental impairments was not harmless because Plaintiff's subjective symptom testimony is directly relevant to the ALJ's step two, RFC, and step four evaluations. Accordingly, the ALJ's errors were not harmless.

Because it is not clear from the record whether the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. On remand, the ALJ must properly evaluate the issues discussed above based on the applicable law and guidance provided in this order. The Court specifically instructs the ALJ to make an additional attempt to conduct a consultative exam of Plaintiff's mental impairments. If Plaintiff fails to attend said exam, the ALJ shall ask Plaintiff why she was unable to attend the exam and determine whether good cause excuses her failure to attend. Because this evidence may affect other portions of the ALJ's decision, the ALJ shall determine if any further evaluation is required based on the issues raised in this order.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. The Court vacates the Commissioner's final decision and REMANDS for further administrative proceedings consistent with this order. The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED**.

Dated: March 30, 2026

_____
SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

22